1
2
3
4
5
6
7

8                          **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  JOHN FREMONT STEEL IV,                      CASE NO. 09CV1743-MMA (WVG)

12                              Plaintiff,       **ORDER:**

13                                               **1) GRANTING IN PART AND**
                                                 **DENYING IN PART CITY**
14                                               **DEFENDANTS' MOTION TO**
                                                 **DISMISS;**
15
                                                 [Doc. No. 90]
16
17       vs.                                     **2) DENYING CITY DEFENDANTS'**
                                                 **MOTION TO STRIKE;**
18                                               [Doc. No. 90]

19                                               **3) GRANTING ATTORNEY**
                                                 **DEFENDANTS' MOTION TO**
20                                               **DISMISS;**

21                                               [Doc. No. 88]

22                                               **4) GRANTING IN PART AND**
                                                 **DENYING IN PART INVESTIGATOR**
23  CITY OF SAN DIEGO, et al.,                   **DEFENDANTS' MOTION TO**
                                                 **DISMISS;**
24                              Defendants.
                                                 [Doc. No. 91]
25
                                                 **GRANTING DEFENDANT SUSAN**
26                                               **HASBROUCK'S MOTION TO**
                                                 **DISMISS**
27
                                                 [Doc. No. 101]
28

1    This action arises from events related to the arrest of Plaintiff John Fremont Steel IV for

2    driving under the influence. On August 11, 2009, Plaintiff filed the instant action alleging violations

3    of his constitutional rights under 42 U.S.C. § 1983 and California Civil Code § 52.1. Plaintiff also

4    named several state law causes of action. (Doc. No. 1.) Thereafter, several defendants filed combined

5    motions to dismiss and motions to strike under California's anti-SLAPP ("Strategic Lawsuits Against

6    Public Participation") statute. (Doc. Nos. 23, 26, 29, 63.) On January 4, 2010, the Court issued an

7    order ruling on the pending motions. (Doc. No. 69.) In the Order, the Court granted in part and denied

8    in part all of the Defendants' motions, with the exception of Defendant Aaron Zigman's motion, which

9    the Court granted in its entirety. In granting portions of the motions to dismiss, the Court gave Plaintiff

10   leave to file an amended complaint.

11   On February 28, 2010, Plaintiff filed his First Amended Complaint ("FAC"). (Doc. No. 85.)

12   Thereafter, the following Defendants filed motions to dismiss: (1) Robert Wood and Janis Stocks

13   ("Attorney Defendants") (Doc. No. 88); (2) City of San Diego, William Landsdowne, Michael

14   McCollough, Gilbert Ninness, San Diego Police Department ("City Defendants") (Doc. No. 90); (3)

15   Confidential Research Company and Laura Marie Sisson-Brown ("Investigator Defendants"); and (4)

16   Susan Hasbrouck ("Hasbrouck") (Doc. No. 101). Plaintiff timely opposed the motions (Doc. Nos. 93,

17   94, 95, 105), and Defendants timely replied (Doc. Nos. 96, 97, 99, 110).

18   **FACTUAL BACKGROUND**

19   This case arises out of events that occurred in connection with the contentious divorce

20   proceedings between Plaintiff and his now ex-wife, Christina Steel. Plaintiff alleges that his wife's

21   attorneys, private investigators hired by her attorneys, and San Diego Police Department officers

22   conspired to have him arrested in order to obtain incriminating child custody evidence against him.

23   Ms. Steel is not named as a defendant to this action.

24   According to the FAC, Christina Steel hired Defendant Wood to represent her in her divorce

25   proceedings. (FAC at ¶ 46.) Plaintiff alleges that on or about July 31, 2007, Wood contacted Sisson-

26   Brown to retain the private investigative services of her and her firm, Confidential Research Company

27   ("CRC"). (*Id.* at ¶ 49.) Plaintiff alleges that the purpose was to ascertain "incriminating evidence that

28   could be used to ignite a custody battle between his client and Plaintiff." (*Id.*) On August 1, 2007,

Sisson-Brown, with the assistance of other private investigators, including Rick Bronold and Luis Gonzalez,[1] began surveillance of Plaintiff. (*Id.* at ¶ 53.) Plaintiff alleges that on August 3, 2007, Bronold told Sisson-Brown that he had a "friend in traffic" at the San Diego Police Department, Defendant McCollough. (*Id.* at ¶ 57.) Plaintiff alleges that Sisson-Brown told Bronold to have his friend arrange a "hot stop" of Plaintiff's vehicle. (*Id.* at ¶ 59.) Plaintiff then alleges that Bronold contacted McCollough the next day, during which Bronold allegedly told McCollough that CRC had been hired to "perform surveillance on Plaintiff and that 'their focus was to collect incriminating child custody evidence' related to Plaintiff." (*Id.* at ¶ 61.)

Plaintiff asserts that in the early afternoon of August 11, 2007, Bronold contacted Sisson-Brown to inform her that Plaintiff was at a friend's private residence. (*Id.* at ¶ 63.) Sisson-Brown and Bronold followed Plaintiff and another friend as they walked around La Jolla Village for several hours and then returned to Plaintiff's friend's house. (*Id.* at ¶¶ 64–65.) Plaintiff alleges that at approximately 10:05 p.m. on August 11, 2007, Bronold contacted Defendant McCollough. Plaintiff contends that shortly after Bronold called McCollough, Sisson-Brown called 911 to report that Plaintiff was driving while intoxicated. (*Id.* at ¶ 67.) During the call, Sisson-Brown allegedly spoke with McCollough. (*Id.*) Plaintiff then alleges that McCollough dispatched Defendant Ninness, who was assigned to patrol Pacific Beach, to La Jolla to meet with Bronold and Sisson-Brown. (*Id.* at 71.) At approximately 10:37 p.m., Officer Ninness met with Bronold and Sisson-Brown in La Jolla. Although Plaintiff's allegations in the FAC are not clear, it appears that Plaintiff drove to another location after leaving his friend's house. When Ninness met with the investigators, the investigators showed Ninness Plaintiff's parked vehicle. Because Plaintiff was not inside the vehicle, Plaintiff alleges that Officer Ninness waited more than two and a half hours for Plaintiff to return to his vehicle. (*Id.* at ¶ 74–76.) Upon returning to his vehicle, Plaintiff got into his car and began to drive home. (*Id.* at ¶ 76.) Officer Ninness followed and eventually pulled Plaintiff over at 12:58 a.m. for failing to come to a complete stop at an intersection with a flashing red light. (*Id.* at ¶¶ 78, 81–83.) Thereafter, Ninness conducted various sobriety tests and ultimately arrested Plaintiff for DUI. (*Id.* at ¶¶ 90–93.) The private investigators, who had been following Steel and Ninness, video recorded the stop and subsequent arrest. (*Id.* at ¶ 82.)

---

[1]Neither Bronold nor Gonzalez have appeared in this action.

Plaintiff, who is a diabetic, alleges that while he was being transported by Defendant Ninness to police headquarters, he went into diabetic shock, even losing consciousness at one point. (*Id.* at ¶ 98.) After several hours at Police Headquarters and a trip to County Jail, Ninness took Plaintiff to the hospital, where the hospital staff administered insulin to Plaintiff. (*Id.* at ¶¶ 100–105.) Plaintiff alleges that within 48 hours, either McCollough, Ninness, or Bronold reported Plaintiff's arrest to Wood. Plaintiff asserts that this was at least seven days before the officers prepared the police report. (*Id.* at ¶ 106.) Plaintiff alleges that Wood then proceeded to include details regarding Plaintiff's arrest and diabetic attack in declarations that he filed in Family Court on August 14, 2007. (*Id.* at ¶¶ 109–110.)

Plaintiff also names Defendant Stocks as part of the conspiracy. Plaintiff alleges that several months after Plaintiff's arrest, Wood "arranged for attorney [Stocks] to assist in the representation of Ms. Steel." (*Id.* at ¶ 116.) Plaintiff alleges that on July 28, 2008, Stocks arranged for the delivery of copies of the private investigators' video recordings, which Plaintiff alleges had been tampered with in order to remove the audio. (*Id.* at ¶ 123.) Plaintiff's claims against Defendant Hasbrouck arise out of his allegations that Hasbrouck, while serving Plaintiff with divorce papers "angrily warned Plaintiff, 'you have no idea who you're fucking with.'" (*Id.* at ¶111.)

On February 28, 2008, criminal charges were filed against Plaintiff related to his arrest on August 12, 2007. (*Id.* at ¶ 114.) To date, criminal charges are still pending.

**Legal Standard**

A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009). Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Accordingly, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, *supra*, 129 S. Ct. at 1950.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

<u>**Analysis**</u>

**A.    City Defendants' Motion to Dismiss**

The City Defendants move to dismiss the FAC on multiple grounds. First, the City Defendants assert that Plaintiff has failed to adequately allege facts to support his claims of unlawful arrest or excessive force. (*City Defs.' Mot. to Dismiss* at 3:5–4:21.) Second, the City Defendants contend that Plaintiff has not properly alleged a civil conspiracy. (*Id.* at 4:22–7:15.) Finally, the City Defendants request that the Court strike certain paragraphs in Plaintiff's FAC because they are "immaterial, argumentative and self-serving statements that have little or nothing to do with the allegations relating to his claims." (*Id.* at 7:17–8:8:8.) Because Plaintiff's causes of action for violations of his constitutional rights are based in part on his civil conspiracy cause of action, the Court shall address that cause of action first.

*1.    42 U.S.C. § 1983 - Civil Conspiracy*

In order to allege a conspiracy under § 1983, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* at 441. This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). A showing that defendants committed acts that "are unlikely to have been undertaken

without an agreement" may support the inference of conspiracy. *Id.* In addition, a conspiracy to violate constitutional rights must be predicated on a viable underlying constitutional claim. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005). In addition, the claim requires "an actual deprivation of constitutional rights." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006). "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." *Mendocino Envtl. Ctr.,* 192 F.3d at1301.

As the Court noted in its first Order, Plaintiff cites various telephone conversations between Bronold, Sisson-Brown, McCullough, and Ninness at the time of the events in question. Plaintiff also identifies testimony by Ninness and McCullough that they were communicating during the pursuit, arrest, and subsequent transport of Plaintiff to police headquarters. Based on these allegations, the Court finds that an agreement or meeting of the minds could be inferred to support the agreement element of a conspiracy. The Court also finds that if Plaintiff is not ultimately convicted of DUI, the allegations would support the unlawful objective element.  Accordingly, the Court finds that Plaintiff adequately alleges a conspiracy against Defendants Ninness and McCollough, and therefore **DENIES** Defendants' motion to dismiss the conspiracy claim.

        2.      *42 U.S.C. § 1983 - Unlawful Arrest*

The City Defendants also move to dismiss Plaintiff's claim that Defendant McCollough violated Plaintiff's constitutional right to be free from an unlawful arrest on grounds that Plaintiff failed to allege what McCollough did, "through his own individual actions, to deprive Plaintiff of any of his rights." (*City Defs.' Mot. to Dismiss* at 3:24–4:4.)[2] In the Court's prior Order, the Court determined that Plaintiff's claim under § 1983 for unlawful seizure and imprisonment claim would be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) in the event that Plaintiff is convicted of DUI. The Court, however, determined that a stay, rather than dismissal, was appropriate in light of the Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384 (2007). In reaching this conclusion, the Court did not address the sufficiency of Plaintiff's claim under § 1983 for unlawful seizure and

---

        [2]The Court notes that the City Defendants in their motion contended that Plaintiff's claims regarding Officer Ninness were insufficient. In their reply brief, however, the City Defendants withdrew their argument as to Officer Ninness in light of the Court's prior order. (*City Defs.' Reply* at 1 n.1.)

imprisonment.

Although the Court still intends to stay this cause of action, the Court finds good cause to address Defendant McCollough's argument. The Court has already noted that Plaintiff has adequately alleged that Defendant McCollough conspired with Defendant Ninness to violate Plaintiff's constitutional rights. Although McCollough may not have conducted the allegedly unlawful arrest himself, he can be held liable for Defendant Ninness's conduct by virtue of his role in the alleged conspiracy. Thus, based on Plaintiff's assertion that there was no probable cause to arrest him, and assuming Plaintiff is not convicted for DUI, Plaintiff's claims are sufficient to withstand Defendant's motion. Accordingly, the Court **DENIES** Defendant McCollough's motion to dismiss Plaintiff's claim for unlawful arrest and imprisonment.

The City Defendants also move to dismiss Plaintiff's cause of action for unlawful arrest and imprisonment to the extent it is based upon the 14th Amendment. The City Defendants assert that there is no cause of action for unlawful seizure under the 14th Amendment. (*City Defs.' Mot. to Dismiss* at 4:5–8.) It is well established that the Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures," and is applicable to the states through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Thus, the Court finds Plaintiff's citation to the Fourteenth Amendment acceptable to the extent Plaintiff does so for the sole purpose of grounding his Fourth Amendment claim. However, it is clearly established that the Fourth Amendment, not the Due Process Clause of the Fourteenth Amendment, governs claims for false arrest brought pursuant to 42 U.S.C. § 1983. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004); *Larson v. Neimi*, 9 F.3d 1397, 1400–01 (9th Cir. 1993) ("Fourth Amendment standards must be used when a person asserts that a public official has illegally seized him."). Thus, to the extent Plaintiff cites to the Fourteenth Amendment to assert that Defendants violated his substantive due process rights guaranteed under the Fourteenth Amendment, the Court **DISMISSES** those claims **without leave to amend**.

2.      *42 U.S.C. § 1983 - Excessive Force*

In the Court's prior Order, the Court denied the City Defendants' motion to dismiss these claims against Defendants McCollough and Ninness to the extent Defendants contended that Plaintiff

had failed to allege sufficient facts to support these claims. (*See Order* at 5:24–6:14.) Accordingly, the Court again **DENIES** the City Defendants' motion.

The City Defendants also move to dismiss Plaintiff's allegations under § 1983 for excessive force to the extent Plaintiff claims Defendants' conduct violated the Eighth and Fourteenth Amendments. (*City Defs.' Mot. to Dismiss* at 4:15–21.) An allegation that the use of excessive force during an arrest violated the Eighth Amendment right not to be subjected to cruel and unusual punishment does not state a claim on which relief can be granted. The Eighth Amendment does not apply until after there has been an adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Because Plaintiff was not convicted of a crime when he claims he was subjected to excessive force, the Court **GRANTS** the City Defendants' motion and **DISMISSES** the excessive force claim to the extent it is based on the Eighth Amendment **without leave to amend**.

As with claims of false arrest, claims of excessive force are not cognizable under the due process clause of the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386 (1989). Thus, to the extent Plaintiff's citation to the Fourteenth Amendment is for the purpose of claiming that the force used against him violated his substantive due process rights guaranteed by the Fourteenth Amendment, the Court also **DISMISSES** those claims **without leave to amend**.

> 3.    *City Defendants' request to strike certain paragraphs of the FAC*

Finally, the City Defendants request that the Court strike certain paragraphs of the FAC on grounds that they are "immaterial, argumentative and self-serving statements that have little or nothing to do with the allegations relating to his claims." (*City Defs.' Mot. to Dismiss* at 7:21–25.) Plaintiff opposes the request, arguing that each paragraph is supportive of his claims. (*Pl.'s Opp.* at 5:9–12.)

Rule 12(f) of the Federal Rules of Civil Procedure provide that a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike is to avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial. *Chong v. State Farm Mut. Auto. Ins. Co.*, 428 F. Supp. 2d 1136, 1139 (S.D. Cal. 2006); *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Rule 12(f) motions "are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying

tactic." *Neilson v. Union Bank of Calif., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Thus, courts generally grant a motion to strike only where "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Leduc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

The Court has reviewed the City Defendants' request as well as the referenced paragraphs they seek to strike. The Court does not find good cause to strike any of the paragraphs identified by the City Defendants because it is not absolutely clear at this time that the factual allegations contained within these paragraphs could have no possible bearing on the subject matter of the litigation. Accordingly, the Court **DENIES** Defendant's request to strike portions of the FAC.

**B.     Attorney Defendants' Motion to Dismiss**

The Attorney Defendants seek dismissal of Plaintiff's complaint for several reasons. First, they contend that Plaintiff's claims should be stricken because Plaintiff has failed to comply with Cal. Civil Code § 1714.10. (*Attorney Defs.' Mot. to Dismiss* at 4:22–8:1.) Second, the Attorney Defendants contend that Plaintiff fails to plead sufficient facts to support his civil conspiracy claim. (*Id.* at 8:2–12:26.)

*1.     Failure to comply with Cal. Civil Code § 1714.10*

Cal. Civil. Code § 1714.10 is a California provision that requires a plaintiff to obtain an order from a court before asserting that an attorney engaged in a conspiracy with his or her client. Specifically, the provision provides:

> (a) No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action.

Cal. Civ. Code § 1714.10.

"[F]ederal courts are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). In determining whether a particular statute is procedural rather than substantive in nature, courts look to whether the statute "really regulates procedure," namely, "the judicial process for enforcing rights and duties recognized by substantive law and for justly

administering remedy and redress for disregard or infraction of them." *Id.* at 464. *See also Naranjo v. The Salvation Army*, 2006 U.S. Dist. LEXIS 72229, at *3 (N.D. Cal. 2006) (holding California Code of Civil Procedure § 425.16, which sets forth requirement that party obtain court approval prior to seeking punitive damages from religious organizations, is procedural in nature because it neither contains substantive elements of punitive damages claims nor limits recovery in any way); *Jackson v. East Bay Hospital*, 980 F. Supp. 1341, 1352 (N.D. Cal. 1997) (holding California Civil Code § 425.13, which requires that a party obtain court approval prior to seeking punitive damages against health care provider, to be procedural).

Here, the Court finds Cal. Civ. Code § 1714.10 to be procedural in nature. The California Court of Appeals has construed the provision to be a "prefiling procedure to determine whether the proposed conspiracy pleading is legally sufficient." *See Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. App. 4th 54, 83 (2003). *See also Pavicich v. Santucci*, 85 Cal. App. 4th 382, 394 (2000) (describing Section 1714.10 as a "procedural hurdle"). Moreover, at least one federal district court declined to strike a plaintiff's claims for failing to comply with the statute after finding the provision to be procedural in nature. *See Franklin v. Allstate Corp.*, 2007 U.S. Dist. LEXIS 51332, at *10–*11 (N.D. Cal. 2007). Accordingly, because the Court finds that Cal. Civ. Code § 1714.10 is procedural in nature, the Court declines to apply it here.

### 2.   42 U.S.C. § 1983 - Civil Conspiracy

Second, the Attorney Defendants contend that Plaintiff has failed to offer anything more than conclusory or speculative allegations to support his claim that Defendants participated in a conspiracy to violate his constitutional rights. In the original complaint, Plaintiff alleged that the Defendants participated in a conspiracy "to interfere with the companionship and society of plaintiff and his minor child." (*See Compl.* at ¶¶ 135–138.) The Court, however, dismissed Plaintiff's claim after determining that this was not a right protected by the Constitution. (*Order* at 7:2–11.) Plaintiff now asserts that the Defendants engaged in a conspiracy to violate his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments and his "Constitutional rights to privacy." (*FAC* at ¶ 165.)

///

///

### a.   Defendant Stocks

As an initial matter, the Court finds that Plaintiff's allegations regarding Defendant Stocks are insufficient to state a claim that she participated in a conspiracy to violate Plaintiff's rights. Plaintiff admits that Defendant Stocks did not become involved in the underlying divorce proceedings until several months after Plaintiff was arrested and suffered the diabetic episode. (*See FAC* at ¶¶ 116–125.) Plaintiff asserts that the fact that Stocks "(1) made false statements to the City Attorney's office, and (2) delivered evidence that she knew had been tampered with" prove her involvement in the conspiracy. (*Pl.'s Opp.* [Doc. No. 94] at 6:13–16.) There are no allegations that Defendant Stocks participated in any agreement to have Plaintiff falsely arrested or subjected to excessive force. Plaintiff's inference that Stocks was involved in the conspiracy by virtue of her alleged conduct several months after the alleged unlawful act occurred is unreasonable in light of the fact that the FAC is completely devoid of any allegations that Stocks was at all involved with Plaintiff, Ms. Steel, or any of the other Defendants when the alleged agreement was formed or the alleged violations of Plaintiff's constitutional rights occurred. Thus, the FAC affirmatively reflects that Plaintiff's arrest and the use of excessive force against him could not have resulted from Defendant Stocks's conduct. Accordingly, the Court finds that Plaintiff fails to allege a civil conspiracy against Defendant Stocks and **DISMISSES** this claim.

### b.   Defendant Wood

Plaintiff's claims against Defendant Wood arise out of Wood's representation of Ms. Steel in the divorce proceedings. (*FAC* at ¶ 46.) Plaintiff alleges that the conspiracy was formed when Wood contacted Sisson-Brown and retained the services of her and CRC to "perform private investigative surveillance on Plaintiff in order to ascertain incriminating evidence that could be used to ignite a custody battle between his client and Plaintiff." (*Id.* at ¶ 49.) Plaintiff then asserts that Wood and Sisson-Brown entered into a contract for services. (*Id.* at ¶ 50.)

Retaining a private investigator to gather "incriminating evidence" is not, in and of itself, an unlawful objective that can serve as the basis of a civil conspiracy claim. Indeed, private investigators are retained by attorneys every day to gather incriminating evidence. Accordingly, the Court finds that Plaintiff's argument that Wood's retention of Sisson-Brown and CRC's services compels the inference

that the retention had an unlawful objective is unreasonable and is grounded on nothing other than Plaintiff's speculation. In addition, the Court notes that there are no allegations that Wood had any contact with the other Defendants prior to the arrest and subsequent diabetic reaction from which the Court could infer Wood's role in the conspiracy.[3] Based on the facts alleged in the FAC, the Court finds that Plaintiff fails to state a claim against Wood for civil conspiracy to violate Plaintiff's constitutional rights. Accordingly, the Court **DISMISSES** this claim.

> 3.     *42 U.S.C. § 1983 - Unlawful Arrest and Excessive Force*

By its own terms, Section 1983 provides a cause of action for conduct by state actors that violates an individual's constitutional rights. 42 U.S.C. § 1983. Non-state actors, however, may be held liable under Section 1983 when they have conspired or acted in concert with state actors to deprive a person of his civil rights. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). Because Plaintiff has failed to adequately allege that the Attorney Defendants were members of the alleged conspiracy, Plaintiff's claims for unlawful arrest and excessive force against the Attorney Defendants are **DISMISSED**.

> 4.     *Leave to Amend*

In his opposition, Plaintiff requests leave to amend if the Court concludes that any part of the complaint is deficient. (*Pl.'s Opp.* at 10:2–17.) Plaintiff has failed to offer any additional facts that he could allege that would correct the deficiencies noted by the Court. Moreover, the Court has already provided Plaintiff with an opportunity to state a claim for civil conspiracy, yet Plaintiff has failed to do so. Because it appears to the Court that amendment would be futile, the Court dismisses the Attorney Defendants **without leave to amend**.

**C.     Investigators' Motion to Dismiss**

The Investigator Defendants seek dismissal of Plaintiff's claims on grounds that Plaintiff fails to adequately allege the Investigator Defendants' involvement in a civil conspiracy. (*Investigator Defs.' Mot. to Dismiss* at 3:4–5:25.)

---

[3]The Court notes that Plaintiff alleges that Wood disclosed information regarding the arrest and subsequent diabetic attack in court filings immediately following the events described in the FAC. These allegations, however, reflect events that occurred after the purpose of the alleged conspiracy had been accomplished, i.e., an unlawful arrest and excessive force. Thus, these facts do not offer any support to Plaintiff's allegation that Wood was a participant in the civil conspiracy.

1          *1.      42 U.S.C. § 1983 - Civil Conspiracy*

2          As already noted, in order for a private citizen to be held liable under the provisions of Section

3    1983, the Plaintiff must sufficiently allege the citizen's participation in a conspiracy with state actors

4    to deprive a person of his civil rights. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). The

5    Investigator Defendants assert that Plaintiff has not adequately alleged Sisson-Brown's participation

6    in a conspiracy because Plaintiff has not sufficiently pled an agreement to violate Plaintiff's

7    constitutional rights. (*Investigator Defs.' Mot. to Dismiss* at 3:4–20.) The investigator Defendants also

8    contend that Plaintiff has not alleged facts that the City Defendants acted under the Investigator

9    Defendants' direction. (*Id.* at 7:1–8:8.)

10          In arguing that Plaintiff's allegations of a civil conspiracy are insufficient, Defendants attempt

11   to analogize their case to the Ninth Circuit case *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350 (9th

12   Cir. 1981). In *Arnold*, the plaintiff alleged that employees of IBM had engaged in a civil conspiracy

13   with law enforcement officers after plaintiff was arrested for theft of IBM documents and trade

14   secrets. *Id.* at 1352. Prior to the plaintiff's arrest, IBM employees assisted a law enforcement task

15   force by providing information concerning the plaintiff's possible criminal activity. While the Ninth

16   Circuit determined that IBM had some involvement with the task force, and that the task force would

17   not have existed but for IBM, ultimately, the Court determined that the IBM officials were not

18   conspirators because Plaintiff had not offered any evidence "that would tend to show that [the

19   company] had some control or power over the Task Force, [or] that [the company] directed the Task

20   Force to take action against Arnold. . . ." *Id.* at 1356. The Investigator Defendants contend that like

21   *Arnold*, Plaintiff has not alleged any facts that they exerted control over the decision making of

22   Defendants Ninness and McCollough.

23          The Court notes that the *Arnold* case came to the Ninth Circuit after the District Court granted

24   summary judgment in favor of the IBM officials. Whether Plaintiff has sufficient evidence to support

25   his allegations remains to be seen. The Court's concern on a motion to dismiss, however, is not with

26   evidence, but factual allegations. Moreover, the facts in IBM were different from those alleged here.

27   In *Arnold*, IBM officials provided the task force with information which led to the investigation of

28   possible criminal activity. The Ninth Circuit described IBM's involvement as follows:

IBM turned over to the Task Force the information that it had gathered concerning the possible leaks of trade secrets during its own investigation. An IBM employee, Callahan, was a member of the Task Force. The Task Force relied heavily, perhaps exclusively, on IBM personnel in determining what information constituted trade secrets, and what documents were IBM documents. The district attorney relied on IBM attorneys to provide appropriate witnesses to testify before the grand jury. IBM supplied the Task Force with "buy money" to enable Bourget to purchase documents and information from the suspected thieves, while under surveillance. IBM also provided the Task Force with money for expenses incurred during the course of the investigation that could not be covered by the local budget. IBM also rented an airplane that was used by members of the Task Force for travel during the course of the investigation. It is clear that "but for" IBM's involvement, there would have been no investigation, and Arnold never would have been arrested or indicted or had his residence searched.

*Id.* at 1357. The critical factual distinction is that IBM did not contact and begin assisting the task force until Arnold committed the criminal act. Here, Plaintiff alleges that the Investigator Defendants were in contact with McCollough *days* before Plaintiff allegedly drove his car while under the influence. Specifically, Plaintiff alleges that "On August 3, 2007, [Sisson-Brown] directed [Bronold] to have [McCollough] arrange a 'hot stop' of Plaintiff's vehicle." (*FAC* at ¶ 59.) Plaintiff then identifies telephone conversations between Bronold and McCollough, conversations which McCollough later testified actually took place. (*Id.* at ¶¶ 60–61.) Several days later on August 11, 2007 and continuing into August 12, 2007, Plaintiff cites multiple conversations between Sisson-Brown, Bronold, McCollough, and Ninness. (*Id.* at ¶¶ 66, 67, 74, 77, 80, 99.) Plaintiff alleges that the plan to have Plaintiff falsely arrested was put in place days before the actual arrest took place, and Plaintiff's allegations regarding telephone records and McCollough's testimony provide factual support for his claim. Based on these allegations, the Court finds that Plaintiff has alleged enough facts that the Investigator Defendants conspired with McCollough and Ninness to violate Plaintiff's constitutional rights. Accordingly, the Court **DENIES** Defendants' motion to dismiss the conspiracy claim.

### 2.    *42 U.S.C. § 1983 - Unlawful Arrest*

The Investigator Defendants also contend that Plaintiff concedes that probable cause existed for the traffic stop when he states that Officer Ninness "pulled over Plaintiff's vehicle because plaintiff failed to come to a complete stop at an intersection with a flashing red light." (*FAC* at ¶ 83). Plaintiff also alleges, however, that he "stopped normally, obeyed the flashing light signal, and went through

the intersection normally." (*FAC* at ¶ 86.) Based on this allegation, Defendants' position that Plaintiff somehow concedes the existence of probable cause to conduct the traffic stop lacks merit. The Investigator Defendants similarly contend that Plaintiff concedes probable cause for his detention and arrest when he alleges that "Officer Ninness 'administered several field sobriety tests on Plaintiff, and concluded that plaintiff was impaired." (*Id.* at ¶ 90.) Plaintiff also alleges, however, that Officer Ninness did not properly administer the field sobriety tests on Plaintiff (*Id.* at ¶ 90) and the preliminary alcohol-screening device "failed" twice (*Id.* at ¶ 93). The inference urged by Plaintiff's factual allegations is that Defendants lacked probable cause to stop, detain, and arrest Plaintiff. Thus, the Court finds the Investigator Defendants' position to be without merit and **DENIES** Defendants' motion to dismiss the unlawful arrest claim.

   3.      *California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.*

   Plaintiff asserts CRC violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"). Plaintiff bases his UCL claim on two predicate statutes: (1) Bus. & Prof. Code § 7523, which makes it unlawful to employ an unlicensed private investigator; and (2) Cal. Penal Code. § 182, which makes criminal conspiracies unlawful. (*FAC* at ¶¶ 190–191.) CRC asserts that Plaintiff's cause of action under the UCL must be dismissed because he has failed to state a claim for violations of either statute. (*Investigator Defs.' Mot. to Dismiss* at 9:11–10:25.)

   California's UCL prohibits unlawful, unfair, and fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200 *et seq.*; *Wolfe v. State Farm Fire & Casualty Ins. Co.*, 46 Cal. App. 554, 558 (1996). The law is "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *Cel-Tech Communs., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Id.*  The Court in *Cel-Tech*, however, advised that a "plaintiff . . . may not 'plead around' an 'absolute bar to relief' simply 'by recasting the cause of action as one for unfair competition.'"*Id.* at 182 (quoting *Mfrs. Life Ins. Co. v. Superior Court*, 10 Cal. 4th 257 (1995)).

   a.      *Bus. & Prof. Code § 7523*

   First, Defendant contends that Plaintiff's claim under the UCL to the extent it is predicated on

Section 7523 must be dismissed because the statute does not provide a private cause of action for violations of the provision. (*Investigator Defs.' Mot. to Dismiss* at 9:18–21.) Under the "unlawful" prong, the UCL borrows violations of other law. *Cel-Tech Comm'ns, Inc.*, *supra*, 20 Cal. 4th 163, 180 (1999). An unlawful act is one "forbidden by law, be it civil or criminal, federal, state or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994). A violation of another law is *per se* a violation of Section 17200. Moreover, "it is not necessary that the predicate law provide for private civil enforcement." *Id.* at 839 (quoting *Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal. App. 4th 1284, 1299 (1993)). Thus, while Defendants are correct that this particular statute does not provide for private civil enforcement, *see* Bus. & Prof. Code § 7523.5, private civil enforcement of the predicate statute is not necessary for a claim under California's UCL. Because employing an unlicensed private investigator is a business practice and such practice is considered unlawful, Plaintiff has adequately stated a claim.[4] Accordingly, the Court **DENIES** CRC's motion to the extent is seeks dismissal of the portion of the UCL claim that is predicated on Section 7523.

> b.   Cal. Penal Code § 182

Second, Defendants contend that because Plaintiff has only alleged that the Defendants engaged in a conspiracy to "violate his constitutional rights," his claim under Cal. Penal Code § 182 must be dismissed. (*Investigator Defs.' Mot. to Dismiss* at 9:22–10:4 (citing *FAC* at ¶42).) Violation of one's constitutional rights is not considered a crime and therefore cannot be the basis of Plaintiff's criminal conspiracy charge. Plaintiff has alleged no criminal conduct to support the predicate offense, thus the Court must dismiss his claim under the UCL to the extent it is predicated on Cal. Penal Code § 182. Furthermore, the Court **DISMISSES** the claim **without leave to amend** because Plaintiff has not identified any additional facts he could allege to state a claim.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Investigator Defendants' motion to dismiss Plaintiff's UCL claim.

---

[4]The Investigator Defendants also assert that Plaintiff's claim is insufficient because Plaintiff alleges that Sisson-Brown is licensed. While Defendants are correct, it is clear that Plaintiff's allegation is based on the fact that CRC employed Bronold, who Plaintiff alleges was unlicensed. Thus, the Court finds this argument without merit.

1    5.    *Negligence per se*

2        Plaintiff asserts that CRC is liable for negligence per se, and he bases this claim solely on the

3    alleged violations of Cal. Bus. & Prof. Code § 7523 and Cal. Penal Code § 182. (*FAC* at ¶ 199.) CRC

4    asserts that these claims should be dismissed because Plaintiff has failed to demonstrate that he falls

5    within the class of persons the legislature sought to protect in enacting either statute. (*Investigator*

6    *Defs.' Mot. to Dismiss* at 11:19–12:1.) CRC also asserts that because Plaintiff's allegations fail to

7    demonstrate a criminal conspiracy, Plaintiff's claim for negligence per se should be dismissed to the

8    extent it is based on Cal. Penal Code § 182. (*Id.* at 12:1–5.)

9        "Under the negligence per se doctrine . . . codified in Evidence Code section 669, 'violation

10   of a statute gives rise to a presumption of negligence in the absence of justification or excuse, provided

11   that the 'person suffering . . . the injury . . . was one of the class of persons for whose protection the

12   statute . . . was adopted." *Ramirez v. Nelson*, 44 Cal. 4th 908, 918 (2008) (quoting *Walters v. Sloan*,

13   20 Cal. 3d 199, 206–07 (1977)).

14       As an initial matter, because the Court has already determined that Plaintiff's allegations do

15   not sufficiently allege a criminal conspiracy to state a claim under Cal. Penal Code § 182, the Court

16   agrees that the claim should be dismissed. Accordingly, the Court **GRANTS** CRC's motion and

17   **DISMISSES** Plaintiff's cause of action for negligence per se to the extent it is based on Cal. Penal

18   Code § 182 **without leave to amend**.

19       The Court, however, finds that CRC has failed to demonstrate that dismissal of the claim, to

20   the extent it is based on Bus. & Prof. Code § 7523, is appropriate. Defendant's only contention is that

21   Plaintiff is not within the class of persons for whose protection the statute was adopted. The Court

22   disagrees. The statute reveals "an intent on the part of the Legislature to require those who engage in

23   business as private investigators and detectives to first procure a license so to do, and that the statute

24   was enacted in the public interest." *Taylor v. Bureau of Private Investigators v. Adjusters*, 128 Cal.

25   App. 2d 219, 225–26 (1954). Specifically, "[t]he public has a right to expect a fairly high degree of

26   probity and reliability on the part of persons who are licensed to conduct investigations concerning

27   matters which may vitally affect their interests." *Id.* Plaintiff asserts that CRC employed an unlicensed

28   investigator and the conduct of that employee violated Plaintiff's constitutional rights. Based on these

1   allegations, the Court finds that Plaintiff falls within the class of persons the legislature sought to

2   protect when it enacted the statute. Accordingly, the Court **DENIES** Defendant's motion to dismiss

3   Plaintiff's claim of negligence per se to the extent he relies on Cal. Bus. & Prof. Code § 7523.

4        For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

5   Investigator Defendants' motion to dismiss Plaintiff's UCL claim.

6   **D.**    **Defendant Susan Hasbrouck**

7        Defendant's allegations against Hasbrouck are related solely to her service of divorce papers

8   on Plaintiff. Specifically, Plaintiff alleges: "Shortly after he was arrested and subsequently released

9   from the hospital, ROBERT WOOD directed defendant SUSAN HASBROUCK to serve Plaintiff with

10   divorce papers. Ms. Hasbrouck angrily warned Plaintiff, "you have no idea who you're fucking with."

11   (*FAC* at ¶ 111.) Plaintiff also asserts that "[a]t the time Plaintiff was served the divorce papers by

12   SUSAN HASBROUCK, Wood and Hasbrouck both knew that Plaintiff was still recovering from the

13   traumatic events related to his arrest." (*Id.* at ¶ 112.) Based on these factual allegations, Plaintiff

14   asserts the following causes of action against Hasbrouck: (1) unlawful seizure and imprisonment

15   pursuant to 42 U.S.C. § 1983, (2) excessive force pursuant to 42 U.S.C. § 1983, (3) civil conspiracy

16   to violate Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983, (4) assault, (5) intentional

17   infliction of emotional distress, (6) negligent infliction of emotional distress, and (7) negligence.

18        Defendant moves to dismiss all claims on grounds that Plaintiff's sparse allegations regarding

19   Hasbrouck's involvement are insufficient to state a claim for relief under any of the asserted causes

20   of action. (*Hasbrouck's Mot. to Dismiss* at 1:8–19.)

21        *a.*      *42 U.S.C. § 1983 - Civil Conspiracy*

22        Plaintiff's causes of action that arise pursuant to 42 U.S.C. § 1983 depend upon his allegation

23   that Hasbrouck participated in the civil conspiracy to violate his constitutional rights. The only

24   allegation against Hasbrouck is that she "angrily" served Plaintiff with divorce papers while

25   threatening "you don't know who you're fucking with." These facts are insufficient to demonstrate

26   any involvement in the conspiracy to violate Plaintiff's constitutional rights. Hasbrouck did not serve

27   the divorce papers until well after the alleged constitutional violations occurred, and there are no facts

28   that otherwise indicate her involvement prior to the constitutional violations. In his Opposition,

Plaintiff describes Hasbrouck's role in the conspiracy as "minor," and admits that her actions "did not extend directly to the principal conspiracy to have Plaintiff unlawfully stopped by the police." (*Pl.'s Opp.* at 2:9–11; 6:26–27.) Plaintiff nevertheless contends that "her delivery of the illegally obtained medical information as well as other information regarding Plaintiff's August 12, 2007 arrest clearly served the principal goal of the conspiracy- to ignite a child custody battle between Plaintiff and his ex-wife." (*Id.* at 6:26–7:2.) Regardless of the impact of Hasbrouck's conduct, however, Plaintiff has failed to allege any facts that Hasbrouck participated in an agreement to violate Plaintiff's constitutional rights. The lone factual allegation that Hasbrouck served Plaintiff with divorce papers, albeit "angrily," the inference urged by Plaintiff—that this fact somehow demonstrates that Hasbrouck was a member of the conspiracy—defies reason. Plaintiff alleges no facts connecting Hasbrouck to a state actor or any other asserted member of the conspiracy. Indeed, Plaintiff concedes that Hasbrouck's only connection was to Defendant Wood, who the Court has already determined was not part of the conspiracy as alleged in the FAC. Plaintiff's allegations are insufficient to demonstrate the elements necessary to state a cause of action for civil conspiracy pursuant to 42 U.S.C. § 1983. Accordingly, the Court **GRANTS** Hasbrouck's motion and **DISMISSES** the civil conspiracy cause of action.

### 2.   *42 U.S.C. § 1983 - Unlawful Arrest and Excessive Force*

By its own terms, Section 1983 provides a cause of action for conduct by state actors that violates an individual's constitutional rights. 42 U.S.C. § 1983. Non-state actors, however, may be held liable under Section 1983 when they have conspired or acted in concert with state actors to deprive a person of his civil rights. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). Because Plaintiff has failed to adequately allege that Hasbrouck was a member of the alleged conspiracy, Plaintiff's claims for unlawful arrest and excessive force are **DISMISSED**.

### 3.   *Assault*

The tort of assault recognizes the individual's right to peace of mind and to live without fear of personal harm. *Thing v. La Chusa*, 48 Cal. 3d 644, 649 (1989). The elements of civil assault are: demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present. *Lowry v. Standard Oil Co.*, 63 Cal. App. 2d 1, 6–7 (1944). "The tort of assault is

complete when the anticipation of harm occurs." (*Kisesky v. Carpenters' Trust for So. Calif.*, 144 Cal. App. 3d 222, 232 (1983). "Mere words, however threatening, will not amount to an assault." 5 Witkin, Summary 10th (2009 Supp.) Torts, § 383, p. 81 (citing Restatement (Second) of Torts § 31 (2010)).

Here, Plaintiff alleges only that Hasbrouck angrily served him with divorce papers with an allegedly threatening message. There is nothing to indicate that Hasbrouck was about to inflict *immediate* injury on Plaintiff when she issued the threat. Indeed, assuming that the statement posed a threat, the threat was not such that Plaintiff was placed in immediate apprehension. Plaintiff attempts to overcome this fact by arguing in his Opposition that the contents of the divorce papers delivered by Hasbrouck somehow convert her conduct into an assault. (*Pl.'s Opp.* at 2:12–3:11.) Plaintiff's contention is without merit. As stated in the comment to the Restatement of Torts:

> Ordinarily mere words, unaccompanied by some act apparently intended to carry the threat into execution do not put the other in apprehension of an imminent bodily contact, and so cannot make the actor liable for an assault . . . . For this reason it is commonly said in the decisions that mere words do not constitute an assault, or that some overt act is required. This is true even though the mental discomfort caused by a threat of serious future harm on the part of one who has the apparent intention and ability to carry out his threat may be far more emotionally disturbing than many of the attempts to inflict minor bodily contacts which are actionable as assaults.

Restatement (Second) of Torts § 31 cmt. a (2010). Here, there was no accompanying act that demonstrated Hasbrouck's intent to carry out the threat. The Court finds Hasbrouck's statement to be more akin to a threat of mere future action. Such a statement cannot serve as the basis of an assault cause of action.[5] Accordingly, the Court **GRANTS** Hasbrouck's motion and **DISMISSES** Plaintiff's assault cause of action.

### 4. *Intentional Infliction of Emotional Distress*

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege facts that demonstrate: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

---

[5]The Court finds Plaintiff's allegation similar to that described in the Restatement's first illustration: "A, known to be a resolute and desperate character, threatens to waylay B on his way home on a lonely road on a dark night. A is not liable to B for an assault under the rule stated in § 21." Restatement (Second) of Torts § 31 cmt. a, illus. 1 (2010).

emotional distress by the outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). Furthermore, the defendant "must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'" *Id.* (quoting *Davidson v. City of Westminister*, 32 Cal. 3d 197, 209 (1982)).

In order to be considered "extreme or outrageous," the conduct must exceed "all bounds usually tolerated by a decent society" and "of a nature which is especially calculated to cause, and does cause mental distress. . . . Ordinarily mere insulting language, without more, does not constitute outrageous conduct." *Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1979). As the Restatement of Torts explains:

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

Restatement (Second) of Torts § 46 cmt. d (2010).

Perhaps recognizing that Hasbrouck's statement, standing alone, is not "outrageous," Plaintiff asserts that Hasbrouck's conduct was outrageous because she "knew that Plaintiff had just emerged from the hospital following an orchestrated traffic stop and arrest followed by a near-fatal diabetic episode." (*Pl.'s Opp.* at 8:8–26.) Plaintiff, however, is merely speculating as to Hasbrouck's knowledge and alleges no facts to support this assertion.

Secondly, the conduct alleged simply does not fall within the ambit of conduct that courts have typically found to meet the "extreme or outrageous" standard. *See, e.g.*, *Alcorn v. Anbro Engineering, Inc.*, 2 Cal. 3d 493, 496 (1970) (finding the defendant supervisor's shouting insulting epithets, terminating plaintiff's employment, and humiliating plaintiff, together, made conduct outrageous); *Kiseskey v. Carpenters' Trust for So. California*, 144 Cal. App. 3d 222, 232 (1983) (finding outrageous conduct from allegations that defendants told plaintiff: 'You are a no good son of a bitch and if you don't sign the agreement and get in set with the union, you'll be put in the hospital;" "Rejoin the union or you might not live to regret it;" and "Since you do not seem to be concerned about your safety and well-being, maybe you will be concerned about the well-being of your wife and children"); *Newby v. Alto Riviera Apartments*, 60 Cal. App. 3d 288, 297–98 (1976) *superseded by*

*statute on other grounds as recognized in Western Land Office, Inc. v. Cervantes*, 175 Cal. App. 3d 724 (1985) (finding threats made in the course of continuous harassment and intimidation comprised a "total course of conduct" that met the test of outrageous conduct). As these cases indicate, threats typically arise to conduct that is "outrageous" when they are made in a course of conduct that includes other acts that, when taken together, become "outrageous."

Plaintiff cites *Golden v. Dungan*, 20 Cal. App. 3d 295 (1971) in support of his contention that Hasbrouck's conduct was "outrageous." (*Pl.'s Opp.* at 8:13–17.) The court in that case determined that the particular manner in which the defendant served the plaintiff with process was outrageous, explaining:

> In a society with this heritage there may be reasonable men who consider it outrageous to serve civil process by pounding on the door of a darkened home at midnight in a loud and boisterous manner which awakens the occupants and the neighborhood, all with the express intent of inflicting extreme mental suffering and duress upon the occupants, and without any attempt to serve, or any reason to believe that process could not be served, on the plaintiff husband at a reasonable time in a reasonable manner.

*Id.* at 309–10. No such circumstances accompanied Hasbrouck's service of the divorce papers on Plaintiff. Thus, the sole basis for Plaintiff's claim is Hasbrouck's threat, which at best could be described as cryptic or vague. While Plaintiff urges the Court to infer a threat of physical harm or other particular sorts of harm from Hasbrouck's language, the Court finds that the meaning behind Hasbrouck's message is not capable of ready determination. (*See Pl.'s Opp.* at 8:18–26 (contending that it could be reasonably inferred that Hasbrouck threatened Plaintiff with "involuntary detention, false arrest, and an improper threat of criminal prosecution").) Because of its ambiguous nature, the Court cannot find that Hasbrouck's threat was "extreme or outrageous."

Finally, the Court notes that "a mere momentary or transitory emotional distress is insufficient to constitute severe emotional distress." *Kiseskey, supra,* 144 Cal. App. 3d at 232. Here, Plaintiff offers only the conclusory allegation that he suffered "severe and extreme mental and emotional distress" as a result of Hasbrouck's conduct. (*FAC* at ¶¶ 179–180.) This allegation is insufficient because Plaintiff must allege facts that demonstrate he suffered "emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Kiseskey*, *supra*, 144 Cal. App. 3d at 231 (internal quotations omitted).

Because Plaintiff has failed to adequately allege that Hasbrouck's conduct was "extreme or outrageous" or that Plaintiff suffered "severe" emotional distress as a result of her conduct, the Court **GRANTS** Hasbrouck's motion and **DISMISSES** Plaintiff's cause of action for intentional infliction of emotional distress.

5.    *Negligence and Negligent Infliction of Emotional Distress*

Plaintiff asserts that Hasbrouck's conduct also supports claims for negligence and negligent infliction of emotional distress. (*FAC* at ¶¶ 181-188.) Defendant asserts that these claims must be dismissed because Plaintiff has failed to allege sufficient facts to state either claim. (*Hasbrouck's Mot. to Dismiss* at 8:25–10:17.)

Negligence is properly pled if a plaintiff alleges facts that (1) the defendant had a legal duty to conform to a standard of conduct to protect the plaintiff, (2) the defendant failed to meet this standard of conduct, (3) the defendant's failure was the proximate or legal cause of the resulting injury, and (4) the plaintiff was damaged. *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996).

Here, Plaintiff alleges that Hasbrouck owed Plaintiff a duty to act reasonably under the circumstances, that Hasbrouck did not comply with this standard of care, and that Plaintiff suffered damages as a direct and proximate result of the breach. (*FAC* at ¶ 186–188.) Defendant contends that Plaintiff fails to allege facts to demonstrate that Hasbrouck breached her duty to act reasonably when she served divorce papers on Plaintiff with a threatening message. (*Hasbrouck's Mot. to Dismiss* at 9:7–18.) Defendant also asserts that Plaintiff has not alleged facts that he was injured as a result of Plaintiff's allegedly threatening message. (*Id.*) The Court finds Plaintiff adequately alleges breach by stating that Hasbrouck did not act reasonably under the circumstances when she served Plaintiff with the divorce papers and threatened him. However, the Court agrees that Plaintiff's complaint is devoid of any facts regarding how Hasbrouck's conduct injured him. Plaintiff's conclusory allegation that he "suffered damages" is just the sort of "formulaic recitation of the elements" that is no longer sufficient to state a claim for relief. *See Iqbal*, *supra*, 129 S.Ct. at 1949. Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's negligence claim.

Negligent infliction of emotional distress is not considered an independent tort, but rather is derived from the tort of negligence. *Marlene F. v. Affiliated Psychiatrict Medical Clinic, Inc.*, 48 Cal.

3d 583, 588 (1989). Thus, all of the same elements of a negligence cause of action must be established in order for a claim of negligent infliction of emotional distress to withstand a motion to dismiss. *Id.* In the context of a negligent infliction of emotional distress claim, and more specifically, the duty element of the claim, California law distinguishes between "direct victim" cases and "bystander" cases. *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992). A "bystander" case arises "in the context of physical injury or emotional distress caused by the negligent conduct of a defendant with whom the plaintiff had no preexisting relationship, and to whom the defendant had not previously assumed a duty of care beyond that owed to the public in general." *Id.* at 1072–73. A "direct victim" case, on the other hand, arises where "damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.'"*Id.* at 1073 (citing *Marlene F., supra*, 48 Cal. 3d at 590). *See also McMahon v. Craig*, 176 Cal. App. 4th 222, 230 (2009). Here, Plaintiff's cause of action for negligent infliction of emotional distress is based on his contention that he was a direct victim of Hasbrouck's conduct. Plaintiff, however, fails to demonstrate that Hasbrouck owed him a duty sufficient to state a claim for negligent infliction of emotional distress as a "direct victim." Plaintiff has not alleged that Hasbrouck assumed a duty, that a duty was imposed on Hasbrouck as a matter of law, or that some relationship existed between Hasbrouck and Plaintiff such that Hasbrouck owed Plaintiff a duty.[6] Nor does the Court find a basis to infer that any such relationship existed or that Plaintiff could allege such a relationship in a future amendment.

In addition, the Court notes that in the context of a claim for negligent infliction of emotional distress, damages may be recovered only for "serious emotional distress." *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 923 (1980). While physical injury is no longer required, there must be "serious mental distress" such that a "reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* at 927–28.

---

[6]The California Supreme Court has limited claims for negligent infliction of emotional distress to three types of factual situations: "(1) the negligent mishandling of corpses; (2) the negligent misdiagnosis of a disease that could potentially harm another; and (3) the negligent breach of a duty arising out of a preexisting relationship." *See* CACI 1620 (citing *Christensen v. Superior Court*, 54 Cal.3d 868, 879 (1991); *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 923 (1980); *Burgess v. Superior Court*; 2 Cal.4th 1064, 1076 (1992)).

1   Thus, Plaintiff's claim for negligent infliction of emotional distress is also subject to dismissal because

2   he fails to establish the damages element of his negligence claim.

3        Because these omissions are fatal to Plaintiff's claim, the Court **GRANTS** Defendant's motion

4   and **DISMISSES** Plaintiff's claim for negligent infliction of emotional distress.

5        *6.   Leave to Amend*

6        In his Opposition, Plaintiff requests leave to amend if the Court concludes that any part of the

7   complaint is deficient. (*Pl.'s Opp.* at 10:6–8.) While Plaintiff fails to offer any additional facts that he

8   could allege that would correct the deficiencies noted by the Court, this is the first time the Court has

9   assessed the sufficiency of Plaintiff's allegations against Defendant Hasbrouck. Having considered

10  the allegations set forth in the Complaint with the factual background provided by Plaintiff in his

11  Opposition, the Court concludes that Plaintiff has already alleged the entirety of Hasbrouck's conduct

12  upon which his claims are based. Thus, the Court has determined that amendment of Plaintiff's claims

13  for violation of 42 U.S.C. § 1983, assault, intentional infliction of emotional distress, and negligent

14  infliction of emotional distress would be futile and dismisses those claims **without leave to amend**.

15  However, because it is not clear that Plaintiff would not be able to correct his cause of action for

16  negligence, the Court dismisses that claim **with leave to amend**. The Court advises Plaintiff, however,

17  that failure to adequately plead these claims in an amended complaint will result in dismissal without

18  further leave to amend.

19                     **Conclusion**

20       For the foregoing reasons, the Court **HEREBY ORDERS THAT**:

21       1.     The City Defendants' Motion to Dismiss (Doc. No. 90) is **GRANTED IN PART**

22            and **DENIED IN PART** as follows:

23            a.     Request for dismissal of Plaintiff's conspiracy claim is **DENIED**.

24            b.     Request for dismissal of Plaintiff's unlawful arrest claim is **GRANTED IN**

25                  **PART** and **DENIED IN PART**.

26            c.     Request for dismissal of Plaintiff's excessive force claim is **GRANTED IN**

27                  **PART** and **DENIED IN PART**.

28  ///

| | | |
|---|---|---|
| 1 | | d. | To the extent the Court dismisses any claim against the City Defendants, the |
| 2 | | | Court does so **without leave to amend**. |
| 3 | 2. | | The City Defendants' Motion to Strike (Doc. No. 90) is **DENIED**. |
| 4 | 3. | | The Attorney Defendants' Motion to Dismiss (Doc. No. 88) is **GRANTED** in its |
| 5 | | | entirety **without leave to amend**. The Court **DISMISSES** Defendants Janis Kay |
| 6 | | | Stocks and Robert Wood **with prejudice**. |
| 7 | 4. | | The Investigator Defendants' Motion to Dismiss (Doc. No. 91) is **GRANTED IN** |
| 8 | | | **PART** and **DENIED IN PART** as follows: |
| 9 | | a. | Request for dismissal of Plaintiff's civil conspiracy claim is **DENIED**. |
| 10 | | b. | Request for dismissal of Plaintiff's unlawful arrest claim is **DENIED**. |
| 11 | | c. | Request for dismissal of Bus. & Prof. Code § 17200 et seq. claim is |
| 12 | | | **GRANTED IN PART** and **DENIED IN PART**. |
| 13 | | d. | Request for dismissal of Plaintiff's cause of action for negligence per se is |
| 14 | | | **GRANTED IN PART** and **DENIED IN PART**. |
| 15 | | e. | To the extent the Court dismisses any claim against the Investigator |
| 16 | | | Defendants, the Court does so **without leave to amend**. |
| 17 | 5. | | Defendant Hasbrouck's Motion to Dismiss (Doc. No. 101) is **GRANTED** in its |
| 18 | | | entirety. |
| 19 | | a. | Request for dismissal of Plaintiff's § 1983 claims is **GRANTED without** |
| 20 | | | **leave to amend**. |
| 21 | | b. | Request for dismissal of Plaintiff's assault claim is **GRANTED without** |
| 22 | | | **leave to amend**. |
| 23 | | c. | Request for dismissal of Plaintiff's intentional infliction of emotional |
| 24 | | | distress claim is **GRANTED without leave to amend**. |
| 25 | | d. | Request for dismissal of Plaintiff's negligence claim is **GRANTED with** |
| 26 | | | **leave to amend**. |
| 27 | | e. | Request for dismissal of Plaintiff's negligent infliction of emotional distress |
| 28 | | | claim is **GRANTED without leave to amend**. |

In light of the foregoing, the Court further **ORDERS** as follows:

1.      Plaintiff shall file his amended complaint on or before ***July 23, 2010***. The amended complaint shall omit all dismissed claims and Defendants, and shall correct the deficiencies against Defendant Hasbrouck as noted herein. Plaintiff may not name new defendants, assert new claims, or change the allegations against any other Defendant unless the Court grants him leave to do so via a separately noticed motion for leave to amend.

2.      Upon the filing of the second amended complaint, this matter shall be stayed as to the City Defendants and the Investigator Defendants.

3.      Defendant Hasbrouck shall answer or otherwise respond to the second amended complaint in accordance with the Federal Rules of Civil Procedure. If Defendant Hasbrouck responds to the second amended complaint by answering, the Court shall thereafter stay the matter as to Defendant Hasbrouck as well.

**IT IS SO ORDERED**.

DATED:  June 30, 2010

Hon. Michael M. Anello
United States District Judge